## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

JOHN M.,[1]              :   Case No. 2:23-cv-02717

      Plaintiff,         :

                      :   District Judge Sarah D. Morrison

vs.                   :   Magistrate Judge Caroline H. Gentry

                      :

COMMISSIONER OF THE SOCIAL   :
SECURITY ADMINISTRATION,

                      :

      Defendant.       :

---

## REPORT AND RECOMMENDATIONS[2]

---

Plaintiff filed an application for Disability Insurance Benefits in May 2021.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because he was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

undersigned Magistrate Judge recommends that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I.     BACKGROUND

Plaintiff asserts that he has been under a disability since November 23, 2020. At that time, he was forty years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 37-54), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

> Step 1:    Plaintiff has not engaged in substantial gainful activity since November 23, 2020, the alleged onset date.
>
> Step 2:    He has the severe impairments of major depressive disorder, cannabis use disorder, generalized anxiety disorder, and schizoaffective disorder/schizophrenia.

4

Step 3:      He does not have an impairment or combination of impairments that
             meets or equals the severity of one in the Commissioner's Listing of
             Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      His residual functional capacity (RFC), or the most he can do despite
             his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235,
             239 (6th Cir. 2002), consists of "a full range of work at all exertional
             levels but with the following nonexertional limitations: capable of
             performing simple, routine and/or repetitive tasks over the course of
             a normal workday and work week without interference from
             significant psychologically[-]based symptoms; able to adapt to the
             customary demands of work in a competitive work setting where
             tasks are simple, routine; no work with the general public; capable of
             brief and superficial contact with coworkers. Superficial defined as
             impersonal interaction with coworkers, but adequate interaction to
             perform duties assigned."

             He is unable to perform any of his past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and RFC,
             there are jobs that exist in significant numbers in the national
             economy that he can perform.

(Decision, Doc. No. 7-2 at PageID 42-50.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 50.)

## B.      State Agency Psychological Consultants

Maria Yapondjian-Alvarado, Psy.D. completed a Disability Determination

Explanation form in September 2021. (AR, Doc. No. 7-3 at PageID 143-48.) Dr.

Yapondjian-Alvarado found moderate impairment in the "Paragraph B" areas of:

interacting with others; concentrating, persisting, or maintaining pace; and adapting or

managing oneself. (*Id.* at PageID 144.) She found mild impairment in the area of

understanding, remembering, or applying information. (*Id.*) More specifically, Dr.

Yapondjian-Alvarado opined that Plaintiff was moderately limited in the abilities of
interacting with the general public, accepting instructions and responding appropriately to
criticism from supervisors, and getting along with coworkers or peers without distracting
them or exhibiting behavioral extremes. (*Id.* at PageID 147.) In terms of functional
limitations, Dr. Yapondjian-Alvarado opined:

> [Plaintiff] is capable of performing simple, routine and/or repetitive tasks.
> [Plaintiff] should be able to sustain a simple, routine and/or repetitive task
> over the course of a normal workday and work week without interference
> from significant psychologically[-]based symptoms. [Plaintiff] should be
> able to adapt to the customary demands of work in a competitive work
> setting where tasks are simple, routine and[/]or competitive. Would do best
> in a work setting away from the public and with brief and superficial
> contact with coworkers[.]

(*Id.* at PageID 147-48.) Paul Tangeman, Ph.D. reviewed the updated record at the
reconsideration level in January 2022. (*Id.* at PageID 154-58.) Dr. Tangeman indicated
that he affirmed Dr. Yapondjian-Alvarado's assessment. (*Id.*)

The ALJ concluded that the state agency psychological consultants' findings were
persuasive. (Decision, Doc. No. 7-2 at PageID 48.) The ALJ explained that their
assessments were "well supported by and consistent with the evidence of record,
including [Plaintiff's] limited mental health treatment." The ALJ noted that Plaintiff
underwent a consultative psychological evaluation after the consultants completed their
assessments, but that "objective findings were limited, noting intact memory, attention,
concentration, [and] fund of knowledge (Exhibit 17F)." (*Id.*) The ALJ also cited
Plaintiff's report that "he continued to receive virtually no treatment." (*Id.*) The ALJ

6

concluded: "Therefore, the evidence received since these opinions were offered do not reasonably suggest greater limitations." (*Id.*)

### C. The ALJ's Hypothetical and Vocational Expert Testimony

The ALJ posed the following hypothetical question to the vocational expert (VE) at the June 2022 hearing:

> First, I want you to consider that [Plaintiff] retained the ability to do work at all exertional levels, mentally capable of performing simple, routine work task[s] over the course of a normal workday and work week without interference from significantly psychologically[-]based symptoms. Able to adapt to the customary demands of work in a competitive work setting, work tasks are simple [and] routine. No work with the general public, capable of brief and superficial contact with coworkers, superficial defined as impersonal interaction but the interaction is adequate to perform duties assigned.

(AR, Doc. No. 7-2 at PageID 78.)

The VE responded that such an individual could perform the following medium, unskilled jobs: Janitor, Dictionary of Occupational Titles (DOT) code 381.687-018, approximately 59,420 positions nationally; Linen Room Attendant, DOT code 222.387-030, approximately 52,220 positions nationally; and Laundry Worker, DOT code 361.685-018, approximately 125,000 positions nationally. (AR, Doc. No. 7-2 at PageID 79.) The ALJ cited to this testimony to support his conclusion that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that he is not disabled. (Decision, Doc. No. 7-2 at PageID 49-50.)

## IV. LAW AND ANALYSIS

Plaintiff asserts just one error: The ALJ "failed to adequately account for all of the state agency psychologists' opined restrictions," despite finding those opinions to be

7

persuasive, and so the ALJ's RFC is unsupported by substantial evidence. (SE, Doc. No. 9 at PageID 781-83.) For the reasons discussed below, Plaintiff's assertion is well-taken, and the ALJ's decision should be reversed.

### A.    Applicable Law.

ALJs are required to analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that

"[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can

readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[3] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

"specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Additionally, the determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x  at 156-57 (6th Cir. 2009). In addition, "[t]he

11

determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.      The ALJ's RFC Is Not Supported By Substantial Evidence.**

Plaintiff asserts that "the ALJ failed to adequately account for all of the state

agency psychologists' opined restrictions" and so the ALJ's RFC is unsupported by

substantial evidence. (SE, Doc. No. 9 at PageID 781-83.) This assertion is well-taken,

because the social limitations that the ALJ assessed do not account for the State agency

psychological consultant's opinions. For that reason, and for the additional reasons

discussed below, the ALJ's RFC limitations are not supported by substantial evidence.

The ALJ concluded that the consultants' findings were persuasive. (Decision, Doc.

No. 7-2 at PageID 48.) However, the ALJ's RFC limitations for no work with the general

public and brief and superficial contact with coworkers ("superficial" defined as

"impersonal interaction with coworkers, but adequate interaction to perform duties

assigned") do not account for the consultants' findings. The undersigned Magistrate

Judge agrees with Plaintiff's assertion that the ALJ's definition of "superficial" contact

with coworkers "essentially made the limitation irrelevant." (Reply, Doc. No. 12 at

PageID 813.) Although "impersonal interactions" could constitute a reasonable definition

of "superficial," the ALJ's addition that Plaintiff is nevertheless capable of "adequate

interaction to perform duties as assigned" renders the superficial limitation essentially

meaningless. In other words, although it appears that the ALJ attempted to craft an RFC

limitation to account for the consultants' opinions regarding interactions with coworkers,

the ALJ actually imposed a limitation that is less restrictive than assessed by the

consultants—without acknowledging or justifying the deviation. Therefore the ALJ did

not account for the consultants' opinions that Plaintiff was moderately limited in the ability to interact with coworkers in the RFC.

The ALJ also failed to fully account for the consultants' findings because she did not acknowledge or consider the consultants' opinions regarding Plaintiff's difficulty with supervisory interactions. The consultants opined that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (AR, Doc. No. 7-3 at PageID 147, 157.) But the ALJ did not acknowledge or consider this opinion in her evaluation. Nor did the ALJ include a limitation related to supervisory interactions in the RFC or explain why she did not include one.

The ALJ therefore erred in her analysis of the State agency psychological consultants' opinions. The ALJ must consider and evaluate the persuasiveness of ***all*** medical opinions and prior administrative medical findings in the record. 20 C.F.R. § 416.920c(b)(c) (emphasis added). Further, if the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Here, as explained above, the ALJ's definition of "superficial" essentially rendered the limitation meaningless, and so she did not account for the consultants' opinions regarding Plaintiff's limitations in the area of interacting with coworkers. The ALJ also failed to consider the consultants' opinion regarding supervisory interactions. The ALJ therefore did not explain why those opinions were not adopted in the RFC, as required by SSR 96-8p.

Defendant cites to a case from this district to assert that the ALJ was under no obligation to impose a limitation for superficial social interactions and that "the issue is

14

whether the ALJ explained the basis for the RFC determination." (Mem. In. Opp., Doc. No. 11 at PageID 792 (citing *Anissa H.*, 2023 WL 1857822, at *8 (S.D. Ohio Feb. 9, 2023) (Litkovitz, M.J.)).) Significantly, the *Anissa H.* court cited to a Sixth Circuit opinion to support its conclusion that the ALJ was not required to impose a limitation to superficial interactions. *Anissa H.*, 2023 WL 1857822, at *8 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)). The *Reeves* court stated that an ALJ need not account for consultants' findings that "are not substantially supported by evidence in the record" and reiterated that the ALJ's RFC determination must be supported by substantial evidence. *Reeves*, 618 F. App'x at 275.

The undersigned Magistrate Judge agrees that the ALJ in this case was not obligated to incorporate the consultants' limitation for superficial social interactions. However, the undersigned disagrees with Defendant's assertion that the ALJ explained her basis for the RFC determination, specifically why she defined "superficial" as "impersonal interaction with coworkers, but adequate interaction to perform duties as assigned." *See Anissa H.*, 2023 WL 1857822, at *8. Further, the consultants' opinions that Plaintiff experiences moderate difficulty interacting with coworkers and can tolerate only superficial contacts with coworkers are "substantially supported by evidence in the record." *See Reeves,* 618 F. App'x at 275. Therefore the ALJ's RFC, which does not account for these opinions, is not supported by substantial evidence.

In her analysis of the State agency medical consultants' findings, the ALJ only generally explained that she found the state agency psychological consultants' findings persuasive because they were "well supported by and consistent with the evidence of

15

record, including [Plaintiff's] limited mental health treatment." (Decision, Doc. No. 7-2 at PageID 48.) The ALJ further concluded that evidence dated after the consultants' assessments did not support additional limitations. (*Id.*) The ALJ cited to "limited" objective findings that Dr. Pawlarczyk documented during the April 2022 consultative psychological evaluation, as well as Plaintiff's report that he "continued to receive virtually no treatment." (*Id.*)

This limited analysis—significantly as it relates to Plaintiff's difficulty interacting with coworkers—is unsupported by substantial evidence. Although the ALJ reasoned that the findings from the April 2022 consultative psychological evaluation were "limited," she only cited to the normal findings of intact memory, attention, concentration, and fund of knowledge. (Decision, Doc. No. 7-2 at PageID 48.) The ALJ ignored the fact that consultative psychologist Dr. Pawlarczyk also reported that Plaintiff's mood was "characterized by . . . both some anxiety and depression" and that Plaintiff's affective expressions were "somewhat flat" with "little variation." (AR, Doc. No. 7-35 at PageID 760.) Dr. Pawlarczyk also stated that Plaintiff appeared somewhat tense and withdrawn, and that Plaintiff reported daily auditory hallucinations. (*Id.*) He stated that although Plaintiff maintained appropriate eye contact "for the most part," Plaintiff "at times would blankly stare." (*Id.*) Dr. Pawlarczyk also stated that Plaintiff seemed "somewhat tense" and "somewhat withdrawn," which was "consistent with [Plaintiff's] report he believed he experienced some social anxiety." (*Id.*) Dr. Pawlarczyk further reported that Plaintiff's performance on the Personality Assessment Inventory indicated that Plaintiff "may have been attempting to place himself in a more socially desirable light while responding to

16

this instrument," and suggested that Plaintiff "may have underestimated some of his problems" during the evaluation. (*Id.* at PageID 762-63.)

All of this evidence, especially Dr. Pawlarczyk's observations about Plaintiff's tense and withdrawn presentation, Plaintiff's reports of daily auditory hallucinations, and Dr. Pawlarczyk's assessment of Plaintiff's social anxiety, provide substantial support for the consultants' findings that Plaintiff was moderately limited in the ability to interact with coworkers and should be limited to superficial interactions with them. *See Reeves,* 618 F. App'x at 275. Further, the ALJ's failure to acknowledge significant evidence that contradicts her conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis)); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

The Court recognizes that the ALJ is not required to directly address every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole must show that [she] implicitly resolved" any conflicts in the evidence. *Id.* Here, the ALJ's heavy reliance on Dr. Pawlarczyk's "limited" findings and her failure to acknowledge the significant abnormalities that Dr. Pawlarczyk documented shows that the ALJ did not resolve the conflicts in the evidence when evaluating the state agency

psychological consultants' findings. For these reasons, the ALJ's analysis of the

consultants' findings—and her RFC—are not supported by substantial evidence.

The ALJ's analysis of the consultants' findings is flawed for another reason. The

ALJ reasoned that the evidence documented Plaintiff's "limited mental health treatment"

and relied on the fact that Plaintiff told Dr. Pawlarczyk he "continued to receive virtually

no treatment." (Decision, Doc. No. 7-2 at PageID 48.) However, the ALJ did not consider

*why* Plaintiff's treatment history was inconsistent with his complaints, as required by the

applicable rule:

> [I]f the frequency or extent of the treatment sought by an individual is not
> comparable with the degree of the individual's subjective complaints, or if
> the individual fails to follow prescribed treatment that might improve
> symptoms, we may find the alleged intensity and persistence of an
> individual's symptoms are inconsistent with the overall evidence of record.
> ***We will not find an individual's symptoms inconsistent with the evidence***
> ***in the record on this basis without considering possible reasons he or she***
> ***may not comply with treatment or seek treatment consistent with the degree***
> ***of his or her complaints.*** We may need to contact the individual regarding
> the lack of treatment or, at an administrative proceeding, ask why he or she
> has not complied with or sought treatment in a manner consistent with his or
> her complaints. . . . ***We will explain how we considered the individual's***
> ***reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis

added). The Sixth Circuit has confirmed that SSR 16-3p requires an ALJ to consider

possible reasons why a claimant failed to seek medical treatment consistent with the

degree of his or her complaints "before drawing an adverse inference from the claimant's

lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th

Cir. 2016). Notably, an individual's inability to understand the need for consistent

treatment and an individual's lack of awareness that treatment is needed are two possible

reasons an ALJ should consider when evaluating treatment history. [4] SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because she did not consider possible

reasons that Plaintiff failed to comply with or seek treatment consistent with his degree of

complaints. Specifically, the ALJ did not consider any explanations for Plaintiff's

noncompliance with medication. Plaintiff testified that he tried taking psychotropic

medication in the past, but "none of them seemed to work" and he was "tired of being a

guinea pig" and having to try so many pills. (AR, Doc. No. 7-2 at PageID 67.) Plaintiff

also said that the last few times that he tried taking medication, the medication made him

"really sick." (AR, Doc. No. 7-2 at PageID 67, 75.)

Consultative psychologist Dr. Miller noted in his September 2021 report that

Plaintiff appeared to exhibit schizophrenia with auditory hallucinations but refused to

take medication at that time. (AR, Doc. No. 7-10 at PageID 454, 456.) Dr. Miller also

noted that Plaintiff said he stopped attending outpatient behavioral health treatment

because he "di[d not] think they helped [him]." (*Id.* at PageID 454.) When Dr.

Pawlarczyk performed a subsequent consultative psychological evaluation in April 2022,

Plaintiff said he had stopped taking Lithium because he thought it "slowed [him] down

too much." (AR, Doc. No. 7-35 at PageID 759.) As for the other psychotropic

---

[4] SSR 16-3p specifically states that a mental impairment that affects judgment, reality testing, or orientation may prevent an individual from being aware that she has a disorder that requires treatment. 2017 WL 5180304 at *10.

medications he had taken in the past, Plaintiff said he "did not find any of these to be helpful." (*Id.* at PageID 759.)

Dr. Pawlarczyk reported that Plaintiff's performance on the Personality Assessment Inventory suggested that he would "likely be resistant to becoming involved in treatment for his emotional problems, consistent with records indicating at times he had refused medication for his condition." (AR, Doc. No. 7-35 at PageID 762-64.) According to Dr. Pawlarczyk, these findings suggested "the possibility of underlying depression and psychotic symptoms [which] would seem to be quite consistent with interview impressions of his behavior." (*Id.* at PageID 763.) Moreover, Dr. Pawlarczyk concluded that although Plaintiff had "not always consistently received the treatment services he requires," his avoidance of medications and treatment "may be due to [Plaintiff's] suspiciousness, which is likely a component of his Schizoaffective Disorder." (*Id.* at PageID 764.)

SSR 16-3p recognizes that an individual's mental impairments and limitations may prevent an individual from understanding the need for consistent treatment, or may affect the individual's judgment to the point she is unaware she has a disorder which requires treatment. 2017 WL 5180304 at *10. In those circumstances, the ALJ should not rely on a claimant's treatment history to draw an adverse inference about the severity of his or her symptoms. The ALJ did not acknowledge, much less address, Plaintiff's or Dr. Pawlarczyk's explanations for medication and treatment noncompliance in her evaluation of the state agency psychological consultants' findings. (Decision, Doc. 7-2 at PageID 48.) Thus, the ALJ's evaluation of the state agency psychological consultants' findings

20

fails to comply with SSR 16-3p. This is another reason why the ALJ's decision should be remanded.

Defendant asserts that the ALJ's discussion of the medical evidence elsewhere in the decision adequately explains the basis for the ALJ's RFC limitations. (*See* Mem. In. Opp., Doc. No. 11 at PageID 792.) The Court has considered the ALJ's factual findings elsewhere in the decision,[5] but concludes that her decisions to define "superficial" contact as "impersonal interaction with coworkers, but adequate interaction to perform duties assigned" and to omit a limitation for supervisory interactions are unsupported by substantial evidence.

At Step 3, the ALJ concluded that Plaintiff was moderately impaired in the "Paragraph B" area of interacting with others. (Decision, Doc. No. 7-2 at PageID 43.) The ALJ reasoned that Plaintiff "reported issues with social anxiety and preferred to stay to himself." (*Id.*) She cited the September 2021 consultative psychological evaluation, where Plaintiff reported having no friends but appeared cooperative on examination. (*Id.* (citing AR, Doc. No. 7-10 at PageID 453).) The ALJ also cited Plaintiff's reports at the April 2022 consultative psychological evaluation that he had a "couple of friends who

---

[5] The Sixth Circuit has held that meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the decision to affirm the ALJ's step three analysis, and finding no need for the ALJ to "spell out every fact a second time"); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at step three). This principle applies to opinion evidence analysis. *E.g., Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (holding that the ALJ did not err by concisely explaining the consistency factor and finding no need for the ALJ to "reproduce the list of [the plaintiff's] treatment records a second time" to support the conclusion, if "she listed them elsewhere in her opinion"). The Court will therefore consider the ALJ's factual findings elsewhere in the decision to consider whether her RFC limitations are supported by substantial evidence.

would call and visit infrequently," that he was "able to go grocery shopping in public without issue," and that he had "previously lived with a girlfriend and now lived with his father." (Decision, Doc. No. 7-2 at PageID 43 (citing AR, Doc. No. 7-35 at PageID 759, 761).) But although the ALJ reasoned that the daily activities reported by Plaintiff at the April 2022 consultative evaluation suggested *abilities* in the area of social functioning, consultative psychologist Dr. Pawlarczyk concluded that Plaintiff's reports of social activities showed "a more limited interest level" and indicated that Plaintiff "did not seem to be very motivated to engage in many activities outside of his home." (AR, Doc. No. 7-35 at PageID 761.)

Moreover, the ALJ failed to consider Plaintiff's reports of auditory hallucinations in her analysis of Plaintiff's ability to interact with others. Plaintiff testified that he experienced social anxiety and daily auditory hallucinations: He said he could "hear people talking and they [are] not even around." (AR, Doc. No. 7-2 at PageID 65, 67.) Plaintiff said that he used medical marijuana, which he said "stops the voices from being mean" but did not lessen the frequency of the hallucinations. (*Id.* at PageID 72-73.) According to Plaintiff, he would be unable to work a full-time job because of the mental exhaustion of "the voices" and anxiety. (Id. at PageID 76.)

The medical records also document Plaintiff's complaints of hallucinations. For example, Plaintiff told his therapist in November 2019 that he heard voices "all day everyday" that felt like "an implanted thought." (AR, Doc. No. 7-35 at PageID 689.) In December 2019, Plaintiff told his therapist that he had "deposited [twenty] million dollars either in a bank or in a brokerage account approximately [ten to thirteen] years ago and

that he [could not] remember" where the money was. (AR, Doc. No. 7-10 at PageID 395.) Although Plaintiff did not exhibit any delusional thinking in January or February of 2020, Plaintiff told his therapist in April 2020 that he had difficulty distinguishing between dreams and reality and that he was "still . . . concerned about the [twenty] million dollars" that he felt was in his brokerage account. (*Id.* at PageID 401, 404, 410-11.) In October 2020, Plaintiff said he continued to hear "mean and derogatory" voices and conversations in his head. (*Id.* at PageID 413.) Plaintiff said that marijuana helped, but his therapist noted that Plaintiff "appear[ed] to minimize his [symptoms]." (*Id.* at PageID 414.) Plaintiff told another provider in October 2020 that he was still hearing voices that were "sometimes . . . quiet [and] other times . . . intense." (AR, Doc. No. 7-35 at PageID 665.) He said that he heard the voices as "mumbling in the distance," which he found "very annoying at times." (*Id.*) Plaintiff's provider also indicated that Plaintiff reported visual hallucinations in the form of a flash of light in his peripheral vision. (*Id.* at PageID 670.) Plaintiff again reported a history of hearing voices during the consultative psychological evaluation in September 2021. (AR, Doc. No. 7-10 at PageID 453, 455.) When he returned to therapy at the direction of his representative in January 2022, Plaintiff reported "primarily negative voices." (AR, Doc. No. 7-35 at PageID 754.) During the April 2022 consultative psychological evaluation, Plaintiff again reported auditory hallucinations on a daily basis. (*Id.* at PageID 760.)

The ALJ acknowledged that Plaintiff's history of auditory hallucinations affected his abilities in the "Paragraph B" area of concentrating, persisting, or maintaining pace. (Decision, Doc. No. 7-2 at PageID 43.) But the ALJ did not account for these symptoms

in her analysis of Plaintiff's social functioning, and so she did not consider how Plaintiff's auditory hallucinations affected his ability to interact with others. (*Id.*)

Defendant also points to the ALJ's discussion of the April 2022 consultative evaluation report to support its assertion that the mental RFC is supported by substantial evidence. (Mem. In. Opp., Doc. No. 11 at PageID 792-93 (citing Decision, Doc. No. 7-2 at PageID 48).) Although the ALJ acknowledged most of Dr. Pawlarczyk's examination findings in her summary of the evaluation and in her analysis of Dr. Pawlarczyk's medical opinions, the ALJ downplayed Plaintiff's reports to Dr. Pawlarczyk of hearing voices. (Decision, Doc. No. 7-2 at PageID 47-48.) According to the ALJ, Plaintiff "endorsed some experiences suggesting hallucinatory activity" but "denied any current auditory hallucinations." (*Id.*) However, Dr. Pawlarczyk stated in his report that Plaintiff reported hearing voices that told him to "[c]lean this or that" on a daily basis. (AR, Doc. No. 7-35 at PageID 760.) Plaintiff said he thought that listening to music reduced his symptoms and that medications and use of cannabis "made it worse." (*Id.*)

Dr. Pawlarczyk also indicated that he reviewed prior medical records from other providers which confirmed Plaintiff's reports of auditory hallucinations. (*Id.* at PageID 761.) For example, Dr. Pawlarczyk referenced a January 2020 record where Plaintiff reported hearing voices. (*Id.*) He cited an October 2020 record that documented Plaintiff's reports of experiencing daily auditory hallucinations, as well as the provider's note that Plaintiff "verbalize[d] bizarre thought content and psychoticism" and exhibited symptoms of both schizophrenia and depression. (*Id.* at PageID 761-62.) Dr. Pawlarczyk further cited a June 2021 record in which a provider suggested that Plaintiff's auditory

24

hallucinations may have been secondary to a prior traumatic brain injury, "though the rationale regarding this was not clear." (*Id.* at PageID 62.) Moreover, Dr. Pawlarczyk reported that Plaintiff's performance on the Personality Assessment Inventory indicated that Plaintiff "may have been attempting to place himself in a more socially desirable light while responding to this instrument," which suggested that Plaintiff "may have underestimated some of his problems" during the evaluation. (*Id.* at PageID 762-63.)

Additionally, the ALJ cited Plaintiff's reports to Dr. Pawlarczyk—that he could go grocery shopping without issue and that he "occasionally called one or two good friends and they would visit him about once every six months"—to discount Dr. Pawlarczyk's opinion that Plaintiff would be unable to meet competitive standards in interacting with the general public and maintaining socially appropriate behavior. (Decision, Doc. No. 7-2 at PageID 48 (citing AR, Doc. No. 7-35 at PageID 761).) But the ALJ ignored Dr. Pawlarczyk's conclusion that Plaintiff's reports of daily and social activities overall showed that Plaintiff "engaged in few activities and was withdrawn" and that he "seemed to have a more limited interested level and did not seem to be very motivated to engage in many activities outside of his home." (AR, Doc. No. 7-35 at PageID 761.)

In sum, the Court concludes that the ALJ erred by failing to acknowledge or address significant evidence that supports Plaintiff's mental health complaints and the consultants' findings regarding Plaintiff's difficulties interacting with others. As discussed above, the Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *See Smith-Johnson*, 579 F. App'x at 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show that she

25

"implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge the ongoing difficulties that Plaintiff experienced from the hallucinatory activity related to his schizoaffective disorder, as well as the effects of Plaintiff's schizoaffective disorder on his ability to understand the need for consistent treatment, shows that the ALJ did not resolve the conflicts in the evidence. In addition, the ALJ's apparent failure to consider significant evidence that contradicts her conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis)); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). For these reasons, the ALJ's RFC is unsupported by substantial evidence.

Finally, Defendant cites to a case from this district to support the assertion that "the ALJ properly defined 'superficial' because there is no regulatory definition of the term." (Mem. In Opp., Doc. No. 11 at PageID 791 (citing *Melinda R. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1090, 2024 WL 193655, at *9 (S.D. Ohio Jan. 18, 2024) (Bowman, M.J.), *report and recommendation adopted in part*, No. 2:23-cv-1090, 2024 WL 1268249 (S.D. Ohio Mar. 26, 2024) (Morrison, D.J.)).) As an initial matter, Defendant cites to several portions of the *Melinda R.* Report and Recommendation that were not adopted by District Judge Morrison.[6] (*Compare* Mem. In Opp., Doc. No. 11 at PageID 788, 791,

---

[6] Judge Morrison adopted only Section II.C.2 of the Report and Recommendation. *Melinda R.*, 2024 WL 1268249, at *2.

793, 795-96, with *Melinda R.*, 2024 WL 1268249, at *1-2.) Nevertheless, Defendant's argument is not well-taken. In the section of the *Melinda R.* Report and Recommendation that Judge Morrison adopted, the court found that "[a]n ALJ may choose any terms she wishes in lieu of 'verbatim' phrasing, so long as the RFC as determined is substantially supported by the record as a whole." 2024 WL 193655, at *9 (citing *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009)). But in this case, the ALJ's definition of "superficial" renders the limitation meaningless, and it is ***not*** substantially supported by the record as a whole, for the reasons discussed above.

Because the ALJ's RFC is not supported by substantial evidence, the undersigned recommends reversal.

### C.    The ALJ's Error Was Not Harmless.

Defendant asserts that any error made by the ALJ was harmless because "Plaintiff does not argue, let alone demonstrate, that any of the jobs the ALJ found him capable of performing required more than superficial interaction." (Mem. In Opp., Doc. No. 11 at PageID 795.) According to Defendant, the jobs that the ALJ cited at Step Five do not require more than superficial interaction, and so any such additional limitation in the RFC would not have changed the ultimate outcome of the decision. (*Id.*) Defendant cites to the "People" ratings of 8 in the DOT listings for the jobs that the VE cited, and to the *Melinda R.* case, to show that these jobs do not require greater than superficial interaction. (*Id.*)

Defendant's assertion is not well-taken. Defendant again cites a portion of the *Melinda R.* Report and Recommendation that District Judge Morrison did not adopt.

*Melinda R.*, 2024 WL 1268249, at *2. Nevertheless, the Sixth Circuit Court of Appeals has not addressed whether the failure to incorporate a limitation for superficial social interaction constitutes harmless error, and there is no consensus among the judges in this district regarding the issue. *Compare Francis v. Comm'r of Soc. Sec.,* No. 2:17-CV-1022, 2018 WL 4442596, at *6 (S.D. Ohio Sept. 18, 2018) (Vascura, M.J.) (the ALJ's failure to limit Plaintiff to superficial interactions with supervisors—as she did with coworkers—is harmless error, as five of the six Step 5 jobs require only limited relationships with people), *report and recommendation adopted,* No. 2:17-CV-1022, 2018 WL 4932081 (S.D. Ohio Oct. 11, 2018) (Smith, D.J.), *with Crisp v. Comm'r of Soc. Sec.,* No. 2:19-CV-2401, 2020 WL 5640056, at *2 (S.D. Ohio Sept. 22, 2020) (Watson, D.J.) (the ALJ's failure to address opinions regarding superficial interaction with the general public was not harmless error, when the VE's testimony addressed only superficial interaction with coworkers).

The Court notes that the term "superficial" is defined by neither the DOT nor in Social Security regulations, SSRs, or HALLEX. Therefore, the undersigned concludes that it cannot rely on the DOT's "People" scale to conclude that the jobs cited by the ALJ at Step 5 require no more than superficial social interaction, much less that the jobs account for any difficulty with supervisory interactions that the ALJ failed to address in the RFC. Defendant's argument also fails to account for the ALJ's failure to address Plaintiff's difficulty with supervisory interactions, which the ALJ ignored in the RFC. Moreover, Defendant's argument "invit[es] this court to perform a duty which is reserved to the ALJ. It is the ALJ, not the court, who must determine what jobs can be performed

28

by plaintiff in light of her limitations." *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at \*6 (S.D. Ohio July 22, 2021) (Vascura, M.J.), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021) (Watson, D.J.) (citation omitted). Thus, reversal is warranted.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's mental functioning and the medical opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential

analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 9) be GRANTED;

2.  The Court REVERSE the Commissioner's non-disability determination;

3.  No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the

objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).